IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>    v.<br><br>**JAVIER ALEJANDRO RIVERA-VAZQUEZ,**<br>    Defendant. | Criminal No. 19-300 (MAJ) |

## REPORT AND RECOMMENDATION

On March 17, 2022, Defendant Javier Alejandro Rivera-Vazquez ("Rivera-Vazquez") pleaded guilty to one count of attempted coercion and enticement of a minor for sexual activity in violation of 18 U.S.C. § 2422(b). Docket ("Dkt.") 45; 47. This court sentenced him to 120 months' imprisonment for his offense. Dkt. 68. His full sentence term is set to expire on May 2, 2029. Dkt. 69. Before the court is his motion for compassionate release. Dkt. 92. The government has opposed. Dkt. 97. This matter was referred to me for a report and recommendation. Dkt. 93. For the following reasons, I recommend that the court **DENY** Rivera-Vazquez's motion for compassionate release.

### BACKGROUND

Rivera-Vazquez is a 38-year-old male born on January 14, 1986. Dkt. 50 at 2. On or about March 11, 2019, he began conversing online with an undercover Homeland Security agent who was posing as a thirteen-year old female minor. *Id*. at 3-4. During the conversations, he sent the agent multiple videos and pictures of adult pornography, along with multiple sexually explicit messages. *Id*. These conversations continued throughout March and April 2019. *Id*. He arranged to meet the supposed minor on May 2, 2019, with the plan to take her to a motel to engage in sexual activity. *Id*. When he arrived at the determined meeting place, he was arrested by Homeland Security agents. *Id*.

Rivera-Vazquez was sentenced to a mandatory minimum 120-month sentence for his offense. Dkt. 69; 70.[1] He is currently incarcerated in a low security area at FCC Coleman in Sumter County, Florida. Dkt. 92-1 at 2. Apart from his conviction in the present case, he has no known criminal history. Dkt. 50 at 6.

Rivera-Vazquez claims eligibility for compassionate release due to his own medical conditions, his need to serve as primary caregiver for his ailing mother and grandmother, and his rehabilitation while incarcerated. Dkt. 92 at 3-5. He claims to suffer from a hernia requiring surgery, gastritis, reflux, GERD, a bone spur in his left foot, and claims to need meniscus surgery in his right knee. *Id*. at 3. He also suffers from morbid obesity – given his height of 5'10" and weight of 325 lbs, his body mass index is in the high 40's, indicating severe obesity. *Id*. He alleges that the Bureau of Prisons ("BOP") is providing inadequate medical care for his conditions. *Id*. He receives medication but argues that his conditions "are not recoverable" and that he is unable to practice sufficient self-care. *Id*. Next, he claims that his 73-year old mother, Sylvia Vazquez-Vazquez, is incapacitated and in need of a primary caregiver. *Id*. at 4. She apparently suffers from Parkinson's disease, eye cataracts, arthritis, and sleep apnea, and requires knee surgery. *Id*. Rivera-Vazquez also claims that he is needed to serve as primary caregiver for his 99-year old grandmother, who is being cared for by his mother. *Id*. Last, Rivera-Vazquez points to his rehabilitation while serving his sentence. *Id*. at 4-5. He has completed numerous educational and self-improvement programs and claims to have a clean record with respect to disciplinary infractions. *Id*.; Dkt. 92-1 at 17.

---

[1] Other district courts in this circuit have held that a mandatory minimum sentence does not preclude a court from reducing a term of imprisonment on a motion for compassionate release. *See, e.g.*, *United States v. Bowers*, No. 1:16-cr-00151-JAW, 2023 U.S. Dist. LEXIS 136506, 2023 WL 5017015, at 18-22 (D. Me. Aug. 7, 2023).

## STANDARD OF REVIEW

A court may grant "compassionate release" to a defendant under 18 U.S.C. § 3582(c)(1)(A). That statute provides, in relevant part, that:

> the court, upon motion of the Director of the Bureau of Prisons or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i)     extraordinary and compelling reasons warrant such a reduction
> ...
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A); *see also* U.S.S.G. § 1B1.13 (sentencing guidelines policy statement on compassionate release). Under this statute, a district court may consider a motion for compassionate release under three circumstances: (1) the motion is filed by the Director of the Bureau of Prisons ("BOP"); (2) the motion is filed by defendant after he exhausts all his administrative rights to appeal BOP's refusal to bring a motion on his behalf; or (3) the motion is filed by defendant 30 days after he requested the BOP to petition for compassionate release on his behalf. 18 U.S.C. § 3582(c)(1)(A).

Once a motion for compassionate release is properly before the court, the court must then determine if the defendant is eligible for release. The statutory language quoted above requires that the defendant show that extraordinary and compelling reasons warrant a reduction in his sentence, that the court consider the factors set forth in 18 U.S.C. § 3553(a) to the extent applicable, and that the reduction be "consistent" with the Sentencing Commission's applicable policy statements. *Id*. The Sentencing Commission's policy statement regarding compassionate release

mirrors the statutory language and adds the requirement that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." *See* U.S.S.G. § 1B1.13. A defendant's potential dangerousness is a paramount concern as a court weighs the decision to grant early release. *United States v. Gil*, 484 F.Supp.3d 19, 22 (D.N.H. 2020); *see also United States v. Bradshaw*, No. 1:15-CR-422, 2019 U.S. Dist. LEXIS 225627, 2019 WL 7605447, at *7 (M.D.N.C. Sept. 12, 2019) (explaining the overlap between the dangerousness requirement in the compassionate release policy statement and the § 3553(a)(2)(C) requirement that courts consider the need to protect the public).

In short, a court may reduce a term of imprisonment under the compassionate release provision if it finds: (1) extraordinary and compelling reasons warrant the reduction; (2) the defendant will not be a danger to the safety of any other person or the community; and (3) the sentencing factors outlined in 18 U.S.C. § 3553(a) weigh in favor of a reduction. *See* 18 U.S.C. § 3582(c)(1)(A); U.S.S.G. § 1B1.13; *see also United States v. Sapp*, No. 14-CR-20520, 2020 U.S. Dist. LEXIS 16491, 2020 WL 515935, at *2-5 (E.D. Mich. Jan. 31, 2020); *United States v. Willis*, 382 F. Supp. 3d 1185, 1187-88 (D.N.M. 2019). The defendant has the burden of showing that he or she is entitled to a sentence reduction. *United States v. Ebbers*, 432 F. Supp. 3d 421, 426 (S.D.N.Y. 2020). The court has "broad discretion in deciding whether to grant or deny a motion for sentence reduction." *United States v. Gileno*, 448 F. Supp. 3d 183, 186 (D. Conn. 2020) (internal quotation marks omitted).

## DISCUSSION

### A.     Exhaustion of Administrative Remedies

Before a motion for compassionate release can be brought before the court, a defendant must exhaust administrative remedies. This is achieved if the motion is filed (1) by the Director of

the BOP; (2) by the defendant after he exhausts his administrative rights to appeal BOP's refusal to bring a motion on his behalf; or (3) by the defendant 30 days after requesting BOP to petition for compassionate release on his behalf. 18 U.S.C. § 3582(c)(1)(A). The defendant has the burden of showing that he exhausted administrative remedies prior to bringing his claim before the court. *See United States v. Wells*, No. 13-151, 2020 U.S. Dist. LEXIS 139425, 2020 WL 4504445, at *10 (E.D. La. Aug. 5, 2020). The First Circuit takes the position that exhaustion of administrative remedies is merely a "mandatory claim processing rule" rather than a jurisdictional requirement. *United States v. Texeira-Nieves*, 23 F.4th 48 (1st Cir. 2022). As a result, the government can waive this requirement "either expressly or by failing to raise it as a defense." *United States v. Pabon-Mandrell*, No. 07-121, 2023 U.S. Dist. LEXIS 229346, 2023 WL 8866598, at *12 (D.P.R. Dec. 22, 2023).

Rivera-Vazquez submitted a request for compassionate release to Warden Mendoza at FCC Coleman on May 28, 2024. Dkt. 92-1 at 2. In a letter dated June 5, 2024, Warden Mendoza responded to Rivera-Vazquez, denying his request for compassionate release. *Id*. Rivera-Vazquez filed the current motion for compassionate release on July 12, 2024, which was more than thirty days after his initial request to Warden Mendoza. Dkt. 92. Thus, Rivera-Vazquez has adequately exhausted his administrative remedies.

The government argues that Rivera-Vazquez failed to fully exhaust his administrative remedies because he did not file an administrative appeal through the Administrative Remedy Program. Dkt. 97 at 3. However, as other courts in this district have previously held, a defendant can file a motion for compassionate release with the district court thirty days after requesting the same from the warden, without having to appeal the warden's response through the Administrative Remedy Program. *See United States v. Silva-Rentas*, No. 14-cr-754-2 (MAJ/BJM), 2024 U.S. Dist.

LEXIS 117724, 2024 WL 3249325, at *9-10 (D.P.R. Jul. 1, 2024); *United States v. Soto*, 613 F. Supp. 3d 538, 542-43 (D. Mass. 2020). Rivera-Vazquez filed his claim over thirty days after his initial request to Warden Mendoza and attached evidence of the same to his motion for compassionate release. His motion is thus properly before this court.

### B. Defendant's Eligibility for Compassionate Release

A court may reduce a term of imprisonment under the compassionate release provision if: (i) extraordinary and compelling reasons warrant the reduction; (ii) the defendant will not be a danger to the safety of any other person or the community; and (iii) the sentencing factors outlined in 18 U.S.C. § 3553(a) weigh in favor of a reduction. *See* 18 U.S.C. § 3582(c)(1)(A); U.S.S.G. § 1B1.13. Since Rivera-Vazquez fails to show extraordinary and compelling circumstances, I recommend that his motion for compassionate release be denied. I shall nonetheless address each of the above requirements individually.

#### i. Extraordinary and Compelling Circumstances

Rivera-Vazquez asserts that his medical conditions, his need to care for his incapacitated mother and grandmother, and his post-conviction rehabilitation collectively constitute extraordinary and compelling circumstances warranting his release. However, his arguments are unpersuasive.

What qualifies as extraordinary and compelling circumstances are outlined in U.S.S.G. Section 1B1.13(b). These include severe medical conditions, age, family circumstances, abuse while imprisoned, and unusually long sentences. *Id*. Section 1B1.13(b)(5), a catchall provision, indicates that any other circumstance of similar gravity to those outlined elsewhere in Section 1B1.13(b), or a combination of such circumstances, may rise to the level of extraordinary and compelling. And per Section 1B1.13(d), "rehabilitation of the defendant is not, by itself, an

extraordinary and compelling reason," but "may be considered in combination with other circumstances in determining whether and to what extent a reduction…is warranted."

First, Rivera-Vazquez has failed to show that his medical conditions rise to the level of extraordinary and compelling. Courts generally view compassionate release due solely to a medical condition as "an extraordinary and rare event" granted only in cases of notable severity. *See White v. United States*, 378 F. Supp. 3d 784, 787 (W.D. Mo. 2019). Rivera-Vazquez's current health conditions were present and noted when he was originally sentenced. *See* Dkt 92 at 3 ("All of these condition(s) have been documented in his PSR"); Dkt. 50 at 10; *see also United States v. Rivera*, Crim. No. 21-10245-FDS, 2024 U.S. Dist. LEXIS 118987, 2024 WL 3329127, at *5 (D. Mass. Jul. 8, 2024) ("[T]he court was aware of defendant's physical condition at the time of his sentencing and nonetheless determined that the sentence imposed was warranted."). He does not claim that his conditions have worsened significantly. Nor does he explain how his conditions are severe enough to "substantially diminish[ his] ability [] to provide self-care within the environment of a correctional facility." U.S.S.G. § 1B1.13(b)(1)(B). With respect to his obesity, "courts have denied compassionate release motions based on obesity when it is not shown that the defendant's conditions diminish their ability to care for themselves." *United States v. Ayala-Martinez*, Crim. No. 97-0082-1 (RAM), 2022 U.S. Dist. LEXIS 181077, 2022 WL 13946049, at *3 (D.P.R. Sept. 28, 2022). His concern over inadequate treatment at FCC Coleman is undercut by the fact that, as he admits, he is receiving medication for his conditions. Dkt. 92 at 3. All told, Rivera-Vazquez fails to show that his medical conditions rise to the level of extraordinary and compelling.

Rivera-Vazquez's second argument for extraordinary and compelling circumstances is that he needs to serve as the primary caregiver for his ailing mother and grandmother. The Sentencing Guidelines provide that "[t]he incapacitation of the defendant's parent when the defendant would

be the only available caregiver for the parent" is an extraordinary and compelling justification for release. 18 U.S.S.G § 1B1.13(b)(3)(C). Section 1B1.13(b)(3)(D) further adds that the need to care for an incapacitated grandparent also qualifies as extraordinary and compelling. The need to care for a close relative is extraordinary and compelling only if the defendant shows that 1) they are the sole available caregiver, and 2) their close relative is in fact incapacitated. *See, e.g.*, *Rivera*, 2024 U.S. Dist. LEXIS 118987, at *7 (denying compassionate release after finding the defendant had three brothers who could care for their father, who in any case was not shown to be incapacitated); *United States v. Bucci*, 409 F. Supp. 3d 1, 2 (D. Mass. 2019) (defendant granted compassionate release since he was the only available caregiver for his incapacitated mother).

In this case, the record is not clear whether Rivera-Vazquez is the sole available caregiver. Rivera-Vazquez claims that his mother has been serving as primary caregiver for his grandmother, but that since his original sentencing, she became incapacitated. Dkt. 92 at 4. Rivera-Vazquez is apparently his mother's only child. *See* Dkt. 50 at 7-10. As will be discussed below, since the record does not conclusively establish his mother's incapacity, it is unclear whether she may still be able to serve as caregiver for herself and her mother. Further, while Rivera-Vazquez has emphasized that his assistance is "immensely needed," it is unclear whether his mother and grandmother receive any other assistance, such as from Rivera-Vazquez's spouse or through in-home care. Rivera-Vazquez "need not be the only imaginable caregiver; it is sufficient that he is the only *available* caregiver." *United States v. Allison*, No. 2:21-CR-20436-TGB-EAS, 2024 U.S. Dist. LEXIS 106477, 2024 WL 3012780, at *8 (Jun. 14, 2024) (emphasis in original). However, on the current record, Rivera-Vazquez has not sufficiently demonstrated that his presence is needed to an extraordinary and compelling extent.

Similarly, the record is unclear as to whether Rivera-Vazquez's mother is in fact incapacitated. Progress notes show that his mother has Parkinson's disease, dizziness, insomnia, memory problems, and tremors. Dkt. 92-1 at 4. However, the progress notes also show preserved motor strength and no ataxia, indicating normal gait. *Id*. These would suggest that her Parkinson's disease and dizziness have not reached a point of rendering her incapacitated. *See United States v. Taveras*, No. 4:19-cr-40049-MRG-5, 2024 U.S. Dist. LEXIS 67198, 2024 WL 1606013, at *12 (D. Mass. Apr. 12, 2024) ("Ms. Cabrera could walk freely throughout her apartment and communicated effectively. Additionally, Ms. Cabrera receives services through her health insurance that allow her to live a relatively independent life, with some assistance. These findings indicate that Ms. Cabrera is not incapacitated.") (internal quotations omitted). Rivera-Vazquez has not explained how these progress notes otherwise show that his mother is incapacitated and submits no other evidence to this effect. As such, on the current record, Rivera-Vazquez has not shown that serving as caregiver constitutes an extraordinary and compelling circumstance in his case.

Last, Rivera-Vazquez's post-conviction rehabilitation does not qualify as an extraordinary and compelling circumstance warranting his release, nor is it sufficient to tip the balance in his favor. The Sentencing Guidelines specifically state that "rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason." U.S.S.G § 1B1.13(d). Rehabilitation is only considered "in combination with other circumstances." *Id*. As discussed above, Rivera-Vazquez fails to demonstrate extraordinary and compelling medical conditions or caregiver status. His rehabilitation efforts, while commendable, do not fill the gap.

### *ii.* **Danger to Community**

The next factor for consideration is whether Rivera-Vazquez would pose a danger to the safety of any other person or to the community if released. I find that his release would not pose a danger.

There is no one test that courts rely upon when determining if a defendant poses a danger to the safety of the public; instead, courts look to various factors that suggest the defendant is more or less likely to reoffend. Factors that courts have considered when deciding if a defendant will pose a danger if they are released, among others, include the defendant's history of prior offenses, particularly if the prior offenses were violent or involved weapons; other evidence of violence; whether the defendant's prior offenses harmed the public in some other way; any disciplinary issues with the defendant while in prison; whether the defendant has pursued educational opportunities while incarcerated; the security level of the defendant's place of incarceration; any health problems faced by the defendant that might curtail the defendant's behavior upon release; and release conditions.[2]

Many of the factors above tilt in Rivera-Vazquez's favor. His offense was nonviolent and did not involve weapons. Dkt. 50 at 3-4. There was no actual victim, since his conduct involved correspondence with an undercover officer. *Id*. He has no other criminal history. *Id*. at 6. His rehabilitation while incarcerated is notable, as he has completed numerous educational courses and

---

[2] *See, e.g.*, *United States v. Nuzzolilo*, 517 F. Supp. 3d 40, 44 (D. Mass. 2021) (denying the defendant's motion due to his history of dealing drugs and returning to the drug trade after prior convictions, and his history of making threats of violence despite apparently never carrying them out); *United States v. Perkins*, 480 F. Supp. 3d 360, 367-69 (D.N.H. 2020) (finding the defendant unlikely to be a danger to anyone after considering his prior federal offenses; the defendant's history of cooperating with law enforcement; his good behavior in prison, including solely minor disciplinary infractions and participation in educational programs; and proposed release to home confinement under strict supervision); *United States v. Bradshaw*, No. 1:15-CR-422, 2019 U.S. Dist. LEXIS 225627, 2019 WL 7605447, at *7-8 (M.D.N.C. 2019) (reducing the defendant's sentence after finding that he led a law-abiding life until his mid-sixties, he had no history of violence, his health problems would significantly limit his activities, his brother and daughter had agreed to provide care for him upon release, and the three years he had already served would deter recidivism).

claims a clean record with no disciplinary infractions. Dkt. 92 at 4; Dkt. 92-1 at 17. He is being held in a low-security section at FCC Coleman, indicating that the BOP does not consider him a substantial threat. *Id*. at 2. He has a clear plan for release detailing both residency and employment. *Id*. at 19. And he appears to have the support of his family, who can assist his transition after prison. *Id*. Other factors weigh toward a finding that Rivera-Vazquez may pose a danger if released. His crime was perpetrated primarily through the internet, potentially complicating supervision post-release. Dkt. 50 at 3-4. His release circumstances would not substantially differ from the environment in which he committed the original crime. And the crime was one in which the harm to a victim would be severe if completed.

After considering the above factors, I conclude that Rivera-Vazquez's early release would not pose a danger to the safety of others and to the community, provided appropriate release conditions were prescribed. I note that he has no other criminal record except for the present conviction and was only charged with one count of unlawful conduct. *See* Dkt. 50 at 1, 6. Robust supervised release conditions could help mitigate concerns about safety to the community. These include internet monitoring, participation in a sex offender treatment program, and restrictions on engaging in any work or volunteer activities bringing him in close contact with a child or children under eighteen. *See* Dkt. 69 at 5 (outlining conditions of supervised release tailored to Rivera-Vazquez's sex offender status); *United States v. Mowry*, No. 1:18-cr-00015-NT, 2021 U.S. Dist. LEXIS 14326, 2021 WL 265245, at *10-12, 15-16 (D. Me. Jan. 26, 2021) (granting compassionate release to a defendant convicted of possession of child pornography on strict supervised release conditions regarding internet access). However, since I found that he failed to show extraordinary and compelling circumstances, his motion for compassionate release should be denied regardless.

### *iii.*    18 U.S.C. § 3553(a) Factors

The third issue the court considers is whether the sentencing factors in 18 U.S.C. § 3553(a) weigh in favor of compassionate release. The Section 3553(a) factors cover a broad variety of considerations, including the nature and circumstances of the offense, the defendant's personal history, the guideline sentencing ranges, the need to avoid unwarranted sentencing disparities, and the need to provide restitution to any victims. *See* 18 U.S.C. § 3553(a). Section 3553(a) also specifies that the sentence imposed should reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence to criminal conduct, protect the public from further crimes by the same defendant, and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. *Id*. In the context of a sentence reduction, the amount of time already served and the time remaining are both relevant considerations. *See, e.g.*, *Nuzzolilo*, 517 F. Supp. 3d 40 at 44 (time served and remaining "very significant" when weighing the Section 3553(a) sentencing factors).

In this case, several factors weigh against Rivera-Vazquez's early release. He was convicted of a serious felony in which he demonstrated clear criminal intent. *See* Dkt. 50 at 4. He was sentenced to a mandatory minimum for his offense and reducing his sentence would cause him to serve less time than defendants convicted of the same crime. However, other factors weigh in his favor. He has no criminal history and there are no victims to provide restitution for. He has served just over half of his total sentence and around 70% of his sentence after factoring good time credit.[3] *See United States v. Gil*, 484 F. Supp. 3d 19, 25 (D.N.H. 2020) (noting that the defendant

---

[3] At time of writing, Rivera-Vazquez has been imprisoned since May 2019 – nearly 65 months. Dkt. 50 at 2. According to the BOP, his current scheduled release date is February 11, 2027, which is around 27 months from time of writing. *See Find an inmate*, Federal Bureau of Prisons, https://www.bop.gov/inmateloc (last visited Oct. 24, 2024, 11:49 AM).

had already served approximately half of his sentence, assuming good-time credit, in deciding to reduce his sentence). His potential dangerousness to the community is considered above and weighs in his favor. And although subject to a mandatory minimum, his offense level and criminal history indicate a guideline sentencing range of 70-87 months, substantially lower than the 120-month sentence he received. Dkt. 70 at 1; *see United States v. Bremer*, CR. No. 17-00276 LEK, 2022 U.S. Dist. LEXIS 75454, 2022 WL 1229963, at *19-20 (D. Haw. Apr. 26, 2022) (finding a sentence reduction consistent with the § 3553(a) factors in part because "[i]f the Court had been able to sentence Bremer without regard to a mandatory minimum, Bremer would have merited a sentence at the low end of the guideline range; most likely at 78 months and not the harsh and lengthier sentence of 120 months required by the mandatory minimum.").

On balance, I find that the § 3553(a) sentencing factors weigh in favor of Rivera-Vazquez's release. However, as noted previously, his failure to demonstrate extraordinary and compelling reasons leads me to recommend denial of his motion for compassionate release.

## CONCLUSION

For the foregoing reasons, I recommend that the court **DENY** Rivera-Vazquez's motion for compassionate release.

This report and recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B) and Rule 72(d) of the Local Rules of this Court. Any objections to the same must be specific and must be filed with the Clerk of Court within two weeks of the date of this order. Failure to file timely and specific objections to the report and recommendation is a waiver of the right to appellate review. *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Davet v. Maccorone*, 973 F.2d 22, 30–31 (1st Cir. 1992); *Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985 (1st Cir. 1988); *Borden v. Sec'y of Health & Human Servs.*, 836 F.2d 4, 6 (1st Cir. 1987).

**IT IS SO RECOMMENDED.**

In San Juan, Puerto Rico, this 29th day of October 2024.

                                          s/ *Bruce J. McGiverin*
                                          BRUCE J. MCGIVERIN
                                          United States Magistrate Judge